## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WILLIAM G. LEARY, JR., and          )
AMY M. LEARY, husband and wife,     )
                                    )
        Plaintiffs,         )
                                    )
        v.                  )     Civil Action No. 3:11-145
                                    )
STATE FARM FIRE & CASUALTY          )     JUDGE KIM R. GIBSON
COMPANY,                            )
                                    )
        Defendant.          )

## MEMORANDUM AND ORDER OF COURT

**GIBSON, J.**

### I. SYNOPSIS

This matter comes before the Court on a renewed motion to dismiss filed by the Defendant on August 8, 2011. ECF No. 12. For the reasons that follow, that motion will be denied.

### II. JURISDICTION AND VENUE

The Court's jurisdiction in this case is predicated on 28 U.S.C. § 1332(a)(1). Venue is proper under 28 U.S.C. § 1391(b).

### III. BACKGROUND[1]

Plaintiffs William G. Leary, Jr. ("William"), and Amy M. Leary ("Amy") [collectively referred to as the "Learys"], are citizens of Pennsylvania and married to each other. ECF No. 11 at ¶¶ 1-3. Defendant State Farm Fire & Casualty Company ("State Farm") is an Illinois corporation maintaining its principal place of business in Bloomington, Illinois. *Id.* at ¶ 4. State Farm is authorized to sell insurance to customers for various types of hazards, including damage

---

[1] Given the procedural posture of this case, the allegations contained in the amended complaint are accepted as true. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

caused by fires. *Id.* The Learys reside in Ebensburg, Pennsylvania. ECF No. 13-1 at 15. During the period of time relevant to this case, the Learys' home was insured against fire damage through a policy purchased from State Farm. ECF No. 11 at ¶¶ 6, 8.

A fire caused damage to the Learys' residence on March 24, 2006. *Id.* at ¶ 9. The losses incurred by the Learys were covered under their insurance policy with State Farm. *Id.* at ¶ 10. State Farm investigated the damage in accordance with the terms of the policy. *Id.* at ¶ 11. Dave Greenawalt ("Greenawalt"), a claims representative employed by State Farm, told the Learys about State Farm's Premier Service Program ("Program") on or around March 25, 2006.[2] *Id.* at ¶ 12. He stated that under the Program, the necessary repairs could be performed by a contractor appearing on a list approved by State Farm. *Id.* at ¶ 13. Greenawalt advised that the contractors appearing on the list had previously performed satisfactory work for parties insured by State Farm. *Id.* The Program provided that participating contractors were to be paid directly by State Farm, and that their work was to be warranted for a period of five years. *Id.* at ¶ 14. Contractors participating in the Program charged less than other contractors for materials and labor, thereby giving State Farm a financial interest in having its insured parties utilize the services of participating contractors. *Id.* at ¶ 19. This financial interest was never disclosed to the Learys. *Id.*

After conferring with Greenawalt, the Learys decided to retain Joe Fenton ("Fenton"), the owner and operator of Joe Fenton Handyman & Remodeling, to complete the repairs. *Id.* at ¶ 16. Fenton was selected because his name appeared on State Farm's list of approved contractors, and because he had been identified by State Farm as an expert in construction, remodeling and fire restoration. *Id.* at ¶¶ 17-18. On March 27, 2006, Fenton inspected the damaged residence and

---

[2] The amended complaint indicates that Greenawalt told the Learys about the Program on the 25th or 26th of March 2006. ECF No. 11 at ¶ 12.

2

prepared a proposal setting forth the repairs that he deemed to be necessary. *Id.* at ¶ 21. The Learys accepted the proposal on March 29, 2006, and provided Fenton with the written authorization that he needed to begin his work. *Id.* at ¶ 22. William signed an authorization form acknowledging that his participation in the Program was voluntary, that he was free to select the independent contractor of his choice to perform the work, and that Fenton had been hired by him rather than by State Farm. ECF No. 13-1 at 40. In addition, State Farm's "Structural Damage Claim Policy" contained language providing that "State Farm d[id] not guarantee the quality of workmanship of any contractor or guarantee that the work w[ould] be accomplished within any specific time frame," and that contractors chosen by insured parties worked for those parties rather than for State Farm. *Id.* at 39.

Fenton intermittently performed work at the Learys' residence between April 12, 2006, and September 11, 2006. ECF No. 11 at ¶ 26. After observing various stages of the project, the Learys became concerned about collateral damage resulting from the repairs and the overall quality of Fenton's performance. *Id.* at ¶ 27. The Learys expressed their concerns to Greenawalt. *Id.* at ¶ 25. Greenawalt responded to the Learys' complaints by telling them that they would be "on their own" if they attempted to fire Fenton. *Id.* The Learys construed Greenawalt's response to mean that State Farm would no longer pay for the repairs if they decided to terminate Fenton's services and retain a different contractor. *Id.*

Code Enforcement Officer Nick Bailey ("Bailey"), an employee of the Cambria County Code Enforcement Agency, inspected the Learys' residence on September 11, 2006, to evaluate Fenton's work. *Id.* at ¶ 28. After observing the property, Bailey determined that Fenton's work was not in compliance with the applicable requirements of the Cambria County Code. *Id.* Fenton was ordered to discontinue his work at the Learys' residence. *Id.*

3

Fenton sent the Learys a bill for his services on November 11, 2006. *Id.* at ¶ 29. On November 21, 2006, William signed a form authorizing State Farm to pay Fenton for his work. ECF No. 13-1 at 41. In a handwritten notation appearing beneath his signature, William stated that he and Amy were not happy with Fenton's performance, and that Fenton had not completed the work to their satisfaction. *Id.* Fenton was fully compensated for his work. ECF No. 11 at ¶ 31.

The Learys inspected their residence and noticed that Fenton's work had not conformed to the specific plans detailed in his earlier proposal. *Id.* at ¶ 32. They also discovered that several items of personal property had been damaged or removed. *Id.* at ¶ 36. The Learys complained to Fenton and Greenawalt about the situation, but neither individual took immediate action to address their concerns. *Id.* at ¶¶ 33, 38.

State Farm eventually retained Engineering Mechanics, Inc. ("Engineering Mechanics"), to evaluate the condition of the Learys' property. *Id.* at ¶ 39. Greenawalt contacted Daniel Grieco, Jr. ("Grieco"), a principal engineer employed by Engineering Mechanics, and asked him to inspect the property. ECF No. 13-1 at 42. The inspection was conducted on March 9, 2007. *Id.* Grieco detailed several deficiencies in Fenton's work in a written report dated March 22, 2007. *Id.* at 42-46. The inadequacy of Fenton's performance has forced the Learys to seek the services of other contractors. ECF No. 11 at ¶ 41. Estimates provided by T.M. McGuire Home Improvements ("T.M. McGuire") and Rainey Electric ("Rainey") on July 18, 2008, suggested that the remaining repairs necessary to correct Fenton's mistakes would cost the Learys a minimum of $94,293.39. *Id.* at ¶¶ 41-42; ECF Nos. 11-5 & 11-6.

4

The Learys commenced an action against Fenton on November 3, 2008, alleging that he was liable for the expenses that they had incurred to remedy his deficient performance.[3] ECF No. 11 at ¶ 43. On May 18, 2009, a judgment was entered against Fenton in the amount of $94,293.04, exclusive of costs and interest.[4] *Id.* at ¶ 44. The Learys have been unsuccessful in their efforts to satisfy the judgment. *Id.* at ¶ 45.

The Learys commenced this action against State Farm on June 22, 2011, alleging violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") [73 PA. STAT. § 201-1 *et seq.*]. ECF No. 1. On July 21, 2011, State Farm filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that the Learys had not alleged an actionable violation of the UTPCPL. ECF No. 7. The Learys filed an amended complaint on August 3, 2011. ECF No. 11.[5] State Farm filed a renewed motion to dismiss on August 8, 2011, challenging the legal sufficiency of the allegations contained in the amended complaint. ECF No. 12. That motion is the subject of this memorandum opinion.

## IV. STANDARD OF REVIEW

In light of the United States Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

---

[3] In the amended complaint, the Learys aver that their action against Fenton was commenced in this Court. ECF No. 11 at ¶ 43. In their brief, the Learys indicate that their action against Fenton was filed in a state court. ECF No. 17 at 4. The Court has unsuccessfully attempted to locate a record of the action.

[4] The amended complaint indicates that the Learys were awarded an additional $155.12 for unspecified reasons. ECF No. 11 at ¶ 44.

[5] The filing of the amended complaint had the effect of mooting State Farm's original motion to dismiss. *Brickell v. Clinton County Prison Board*, 658 F. Supp. 2d 621, 623 (M.D. Pa. 2009).

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). This standard requires more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The complaint must allege a sufficient number of facts "to raise a right to relief above the speculative level." *Id.* This requirement is designed to facilitate the notice-pleading standard of Federal Rule of Civil Procedure 8(a)(2), which requires "a short and plain statement of [a] claim *showing* that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2)(emphasis added).

In considering a motion to dismiss filed pursuant to Rule 12(b)(6), a court accepts all of the plaintiff's allegations as true and views all reasonable inferences drawn from those allegations in the light most favorable to the plaintiff. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997). The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). In addition to the allegations contained in the complaint, a court presented with a motion to dismiss may consider matters of public record, exhibits attached to the complaint, and other items appearing in the record of the case. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994).

## V. DISCUSSION

The UTPCPL declares certain "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" to be unlawful. 73 PA. STAT. § 201-3. This statutory prohibition makes it unlawful for a person conducting "trade or commerce" to "[c]aus[e] likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services," to "[r]epresent[] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he [or she] does not have," to "[r]epresent[] that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another," or to "[e]ngag[e] in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."[6] 73 PA. STAT. § 201-2(4)(ii), (v), (vii), (xxi). The Learys contend that State Farm violated the UTPCPL by misrepresenting the attributes of the Program in general and the qualifications of Fenton in particular. ECF No. 11 at ¶¶ 52-63.

### A. The Learys' Statutory Standing to Sue State Farm Under the UTPCPL

Section 4 of the UTPCPL provides Pennsylvania's Attorney General and District Attorneys with the authority to bring actions in the name of the Commonwealth of Pennsylvania (the "Commonwealth") to restrain prohibited conduct "by temporary or permanent injunction" whenever they have "reason to believe that any person is using or is about to use" an unlawful "method," "act" or "practice." 73 PA. STAT. § 201-4. Section 9.2(a) of the UTPCPL provides

---

[6] Although the UTPCPL enumerates twenty-one prohibited practices, the Court references only the statutory provisions defining the four prohibited practices alleged by the Learys. 73 PA. STAT. § 201-2(4); ECF No. 11 at ¶ 59.

that an action against an offending "person"[7] may be commenced by "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice" declared to be unlawful. 73 PA. STAT. § 201-9.2(a). The Pennsylvania Supreme Court has recognized a distinction between actions commenced by the Commonwealth to restrain existing or impending violations of the UTPCPL and actions brought by private litigants to remedy specific injuries caused by such violations. *Weinberg v. Sun Co., Inc.*, 777 A.2d 442, 445-46 (Pa. 2001). The Commonwealth, acting through the Attorney General or a District Attorney, may broadly invoke § 4 to vindicate the public interest. *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 202 (Pa. 2007). In contrast, a private plaintiff maintaining an action under the UTPCPL must satisfy the specific criteria applicable under § 9.2(a). *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221-27 (3d Cir. 2008).

A violation of the UTPCPL occurs whenever a person engages in "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." 73 PA. STAT. § 201-3. Nevertheless, a private plaintiff cannot prevail under § 9.2(a) simply by demonstrating that a defendant has engaged in prohibited conduct. *Keller v. Volkswagon of Am., Inc.*, 733 A.2d 642, 646-47 (Pa. Super. Ct. 1999). Instead, he or she must also establish that: (1) he or she qualifies as a purchaser or lessee; (2) the transaction at issue involved "goods or services"; (3) the "goods or services" were purchased or leased "primarily for personal, family or household purposes"; (4) he or she suffered an "ascertainable loss of money or property"; and (5) the "ascertainable loss" occurred "as a result of" the defendant's unlawful conduct. 73 PA. STAT. § 201-9.2(a); *Keller*, 733 A.2d at 646-47.

---

[7] The term "person" is defined broadly enough to include "natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entities." 73 PA. STAT. § 201-2(2).

8

State Farm challenges the Learys' statutory standing to proceed with their claims under the UTPCPL. ECF No. 13 at 8-9. The crux of State Farm's argument is that the Learys purchased "goods or services" only from Fenton, and that only Fenton is amenable to suit under the present circumstances. *Id.* State Farm's "Structural Damage Claim Policy" plainly provided that the "quality" of Fenton's "workmanship" could not be guaranteed, that Fenton was being hired by the Learys rather than by State Farm, and that Fenton could perform work at the Learys' residence only with their explicit authorization. ECF No. 13-1 at 39. The authorization form signed by William on March 29, 2006 contained language acknowledging that the Learys' participation in the Program was voluntary, that they were free to select the contractor of their choice to perform the needed repairs, and that Fenton had been hired by them rather than by State Farm. *Id.* at 40. A plaintiff cannot invoke the UTPCPL to proceed against a party having no involvement with the challenged transaction. *Portis v. River House Assocs., L.P.*, 498 F. Supp. 2d 746, 753 (M.D. Pa. 2007) (dismissing UTPCPL claim against a "wholly unrelated party"). State Farm posits that the Learys do not qualify as purchasers or lessees of its "goods or services" for purposes of § 9.2(a) since the "services" alleged to have been defective were directly provided to them by Fenton. ECF No. 13 at 8-9.

The Learys acknowledge that they never purchased "construction services" from State Farm. ECF No. 17 at 11. They attempt to establish their status as "purchasers" by relying on their procurement of an insurance policy from State Farm. *Id.* The UTPCPL prohibits "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 PA. STAT. § 201-2(4)(xxi). The Learys allege that State Farm deceived them by misrepresenting the extent to which it had screened Fenton's background prior to adding his name to its list of approved contractors. ECF No. 11 at ¶ 50. They also fault State Farm for

9

failing to disclose its financial interest in encouraging participation in the Program and securing the concomitant discounts offered by participating contractors. *Id.* at ¶ 51.

The UTPCPL defines the terms "trade" and "commerce" broadly enough to include "the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate . . . ." 73 PA. STAT. § 201-2(3). The procurement of an insurance policy providing coverage for a residential structure constitutes a "purchase" of "goods or services" for a "personal, family or household purpose."[8] *Britamco Underwriters, Inc. v. C.J.H., Inc.*, 845 F. Supp. 1090, 1096 (E.D. Pa. 1994). The Learys aver that they purchased a policy from State Farm insuring their residence for losses resulting from a fire. ECF No. 11 at ¶ 6. They further aver that State Farm knew that they would continue to use the structure as a residence after the completion of the repairs. *Id.* at ¶ 20. Since the policy was originally purchased and later invoked to protect the Learys' residence, the averments contained in the amended complaint sufficiently allege that they purchased "goods or services primarily for personal, family or household purposes." 73 PA. STAT. § 201-9.2(a); *Valley Forge Towers S. Condo. v. Ron-Ike Foam Insulators, Inc.*, 574 A.2d 641, 648 (Pa. Super. Ct. 1990)(explaining that the "purpose" of a purchase, rather than "the type of product purchased," controls the question of whether "goods and services" have been purchased "primarily for personal, family or household purposes").

The Learys allege that Fenton's inadequate performance has caused them to incur a minimum of $94,293.39 in damages. ECF No. 11 at ¶ 42. This averment constitutes an allegation that the Learys suffered an "ascertainable loss of money or property." 73 PA. STAT. § 201-9.2(a). The only remaining question pertaining to the issue of statutory standing is whether

---

[8] A person who purchases an insurance policy only for business purposes has no statutory standing to sue the insurer under the UTPCPL. *Am. Standard Life & Accident Ins. Co. v. U.R.L., Inc.*, 701 F. Supp. 527, 538 (M.D. Pa. 1988).

10

the Learys properly allege that this "loss" occurred "as a result of" State Farm's use of a prohibited "method," "act" or "practice." *Id.*; *Keller*, 733 A.2d at 646.

The Pennsylvania Supreme Court has consistently construed § 9.2(a) to incorporate the common-law elements of justifiable reliance and causation. *Schwartz v. Rockey*, 932 A.2d 885, 897 n.16 (Pa. 2007); *Toy*, 928 A.2d at 201-03; *Weinberg*, 777 A.2d at 446. In order to establish these elements at the pleadings stage, the Learys must allege that they justifiably relied on Greenawalt's representations, and that those representations induced them to engage in some form of detrimental activity. *Hunt*, 538 F.3d at 227. The amended complaint contains averments alleging that the Learys justifiably relied on Greenawalt's representations to their detriment. ECF No. 11 at ¶¶ 61-63. These averments relate to Greenawalt's alleged statements about the qualifications of the individuals appearing on State Farm's list of approved contractors, and to the Learys' subsequent decision to hire Fenton because of his status as an approved contractor. *Id.* at ¶¶ 12-22.

Some decisions applying the UTPCPL contain language suggesting that a plaintiff attempting to proceed under § 9.2(a) must allege that his or her "purchase" of "goods or services" was made "as a result of" the defendant's prohibited conduct. *World Wrestling Fed'n Entm't, Inc. v. Big Dog Holdings, Inc.*, 280 F. Supp. 2d 413, 446 (W.D. Pa. 2003)("Because WWE does not bring this claim as a consumer, and fails to allege that it purchased or leased Big Dog's WBDF merchandise as a result of the allegedly unfair trade practice, it has no standing to bring an action for unfair competition pursuant to Section 201-3.")(footnote omitted). Relying on such language, State Farm asserts that the Learys must establish a direct causal link between Greenawalt's misrepresentations and their status as "purchasers" of the "goods or services" at issue. ECF No. 13 at 8-9. State Farm would be correct if the Learys were attempting to establish

11

that their injuries were directly attributable to their procurement of the insurance policy. In this case, however, the Learys allege that they were injured by unlawful actions taken by State Farm *after* they had already purchased the policy. ECF No. 17 at 9-11. For this reason, the language referenced by State Farm does not control the disposition of the Learys' claims.

State Farm is mistaken to the extent that it believes that the causal link required under § 9.2(a) must be tied directly to the Learys' initial "purchasing" decision. ECF No. 13 at 8-9. The position advanced by State Farm is foreclosed by *In re Smith*, 866 F.2d 576 (3d Cir. 1989). Referring to § 9.2(a) in *Smith*, the United States Court of Appeals for the Third Circuit explained:

> The language of the statute places only two express limitations: (1) the purchase of goods or services must lead to a loss as a result of an unfair or deceptive act or practice, and (2) the class of litigants includes only those persons who purchase or lease goods or services primarily for consumer use rather than for commercial use. Although it is clear that the loss must follow the purchase of goods or services, the language does not compel the conclusion that the unfair or deceptive conduct must have induced the consumer to make such a purchase.

*Smith*, 866 F.2d at 583. The Court of Appeals went on to reject a reading of § 9.2(a) that would insulate practices occurring after the initial execution of an agreement from judicial scrutiny under the UTPCPL. *Id.* Given the holding in *Smith*, the Learys can proceed under § 9.2(a) by demonstrating that Greenawalt engaged in prohibited conduct "during the life of" the insurance contract that they had previously "purchased" from State Farm. *Id.* at 182. State Farm's challenge to the Learys' statutory standing is without merit.

## B.    The Actionable Nature of State Farm's Alleged Conduct

In order to state an actionable claim against State Farm, the Learys must allege conduct that was violative of the UTPCPL. 73 PA. STAT. §§ 201-2(4), 201-3. Their averments must sufficiently allege that State Farm employed "[u]nfair methods of competition and unfair or

12

deceptive acts or practices in the conduct of any trade or commerce . . . ." 73 PA. STAT. § 201-3; *Keller*, 733 A.2d at 646-47. As discussed earlier, the terms "trade" and "commerce" are defined broadly enough to include the sale and distribution of insurance policies. 73 PA. STAT. § 201-2(3); *Britamco*, 845 F. Supp. at 1096. A person participating "in the conduct of . . . trade or commerce" violates the UTPCPL whenever he or she engages in "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 PA. STAT. § 201-2(4)(xxi).

A plaintiff attempting to demonstrate that a defendant has engaged in "fraudulent" conduct must establish each element of common-law fraud. *Commonwealth v. Percudani*, 825 A.2d 743, 746 (Pa. Commw. Ct. 2003). In order to establish the existence of common-law fraud, a plaintiff must ordinarily demonstrate that: (1) the defendant misrepresented a material fact concerning the transaction at issue; (2) the misrepresentation was made with the requisite degree of scienter (*i.e.*, an intent to defraud); (3) the defendant intended to induce him or her to act in a detrimental manner; (4) he or she justifiably relied on the defendant's misrepresentation; and (5) he or she suffered damages as a proximate result of such reliance. *Colaizzi v. Beck*, 895 A.2d 36, 39 (Pa. Super. Ct. 2006). A plaintiff attempting to show that a defendant has engaged in "deceptive" conduct need not establish all of these elements. *Vassalotti v. Wells Fargo Bank, N.A.*, 732 F. Supp. 2d 503, 510 n.7 (E.D. Pa. 2010). In order to establish the existence of unlawful "deception," a plaintiff must demonstrate that: (1) the defendant engaged in conduct that was likely to deceive an objectively reasonable individual under the relevant circumstances; (2) he or she justifiably relied on the information (or misinformation) presented by the defendant; and (3) he or she suffered damages as a proximate result of such reliance. *Seldon v. Home Loan Services, Inc.*, 647 F. Supp. 2d 451, 470 (E.D. Pa. 2009).

13

Regardless of whether a plaintiff characterizes the prohibited conduct as "fraudulent" or "deceptive," he or she cannot state a claim under the UTPCPL by relying on "an insurer's mere refusal to pay a claim." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 307 (3d Cir. 1995). An insurer's refusal to make a payment pursuant to its contractual obligations constitutes only an act of "nonfeasance" and is not actionable under the UTPCPL. *Hampton v. GEICO Gen. Ins. Co.*, 759 F. Supp. 2d 632, 651-52 (W.D. Pa. 2010). In the insurance context, the UTPCPL prohibits only acts of "misfeasance." *MacFarland v. U. S. Fid. & Guar. Co.*, 818 F. Supp. 108, 111 (E.D. Pa. 1993). A party's complete failure or refusal to perform a contractual duty constitutes "nonfeasance," whereas his or her *improper* performance of a contractual obligation constitutes "misfeasance." *Smith v. Nationwide Mut. Fire Ins. Co.*, 935 F. Supp. 616, 620 (W.D. Pa. 1996).

The Learys allege that Greenawalt told them that they would be "on their own" if they were to discharge Fenton and secure the services of a different contractor. ECF No. 11 at ¶ 25. They allegedly construed Greenawalt's statement to mean that State Farm would not provide coverage for any services provided by the individual chosen as Fenton's replacement. *Id.* The damages sought in this action include, *inter alia*, the \$94,293.39 that it will cost the Learys to correct Fenton's mistakes and omissions. *Id.* at ¶ 42. State Farm argues that the Learys' UTPCPL claims are based on "nonfeasance" rather than on "misfeasance." ECF No. 13 at 9-12. In essence, State Farm contends that the Learys are attempting to recharacterize untimely breach-of-contract claims as timely UTPCPL claims. *Id.*

Pennsylvania's General Assembly has enacted a six-year statute of limitations which applies to any civil action that is not subject to a specified limitations period. 42 PA. CONS. STAT. § 5527(b). Since the UTPCPL does not contain its own statute of limitations, actions

14

arising thereunder must be commenced within six years of the alleged statutory violation. *Gabriel v. O'Hara*, 534 A.2d 488, 494-96 (Pa. Super. Ct. 1987). This action was commenced on June 22, 2011. ECF No. 1. Given that Greenawalt's alleged misrepresentations were made no earlier than March 25, 2006, the Learys' UTPCPL claims are timely. ECF No. 11 at ¶ 12.

State Farm posits that the Learys cannot proceed with their UTPCPL claims because they did not assert timely breach-of-contract and "bad faith" claims stemming from its alleged refusal to pay for further repairs. ECF No. 13 at 11-12. Breach-of-contract claims are ordinarily governed by a four-year statute of limitations. 42 PA. CONS. STAT. § 5525. A contractual policy provision limiting the period of time in which an insured party can commence an action against his or her insurer based on an alleged breach of the underlying insurance contract can usually be enforced under Pennsylvania law. *Prime Medica Assocs. v. Valley Forge Ins. Co.*, 970 A.2d 1149, 1156 (Pa. Super. Ct. 2009). It is not clear whether breach-of-contract claims brought by the Learys would be barred by a contractual limitations period unique to the parties in this case, or whether State Farm is relying on the statutory limitations period of four years in support of its argument. ECF No. 13 at 11-12. The Court notes that statutory "bad faith" claims arising under 42 PA. CONS. STAT. § 8371 are subject to a two-year statute of limitations. 42 PA. CONS. STAT. § 5524; *Ash v. Cont'l Ins. Co.*, 932 A.2d 877, 885 (Pa. 2007). State Farm accuses the Learys of trying to circumvent the applicable limitations periods by recasting breach-of-contract and "bad faith" claims stemming from "nonfeasance" as UTPCPL claims based on "misfeasance." ECF No. 13 at 11-12.

The argument advanced by State Farm is unavailing. It may be that the damages sought by the Learys under the UTPCPL are not materially different from the damages that they would have sought in a timely breach-of-contract or "bad faith" action. That is of no dispositive

15

significance. A claim arising under the UTPCPL is meaningfully different from a claim arising directly under an insurance contract. A plaintiff seeking to recover damages in a breach-of-contract action need only demonstrate that a contract was in existence, that the defendant breached a duty arising under the contract, and that he or she suffered damages as a result of the defendant's breach. *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 716 (Pa. Super. Ct. 2005). No showing of "fraudulent or deceptive conduct" is required. 73 PA. STAT. § 201-2(4)(xxi). A litigant cannot prevail under the UTPCPL without establishing the element of justifiable reliance. *Hunt*, 538 F.3d at 225-227. A plaintiff attempting to proceed on a breach-of-contract theory need not surmount that hurdle. *Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652, 665 (Pa. 2009). The Learys do not base their claims on State Farm's failure or refusal to pay for further repairs. Instead, they base their claims on the "ascertainable loss of money or property" that they suffered because of Greenawalt's alleged misrepresentations about the Program's general characteristics and Fenton's specific qualifications. 73 PA. STAT. § 201-9.2(a). The affirmative misrepresentations allegedly made by Greenawalt cannot be fairly characterized as simple "nonfeasance." *Zaloga v. Provident Life & Accident Ins. Co. of Am.*, 671 F. Supp. 2d 623, 633 (M.D. Pa. 2009); *Parasco v. Pacific Indem. Co.*, 870 F. Supp. 2d 644, 648 (E.D. Pa. 1994).

## C.    The Sufficiency of the Learys' Allegations

Federal Rule of Civil Procedure 9(b) provides that a party "alleging fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). The primary purpose of Rule 9(b)'s "particularity" requirement is "to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). The requirement is satisfied when

16

defendants are provided with notice of the precise nature of the claims asserted against them. *Johnson v. GEICO Cas. Co.*, 516 F. Supp. 2d 351, 358 (D. Del. 2007).

State Farm argues that the Learys' allegations are insufficient to satisfy the pleading standards applicable under Rule 9(b). ECF No. 13 at 12. As an initial matter, the UTPCPL prohibits both "fraudulent" and "deceptive" conduct. 73 PA. STAT. § 201-2(4)(xxi). A plaintiff alleging "deceptive" conduct need not satisfy Rule 9(b)'s "particularity" requirement. *Vassalotti*, 732 F. Supp. 2d at 511. To the extent that the Learys allege "fraudulent" conduct, the relevant question is whether their factual averments adequately describe the "nature and subject" of the misrepresentations allegedly made by Greenawalt. *Johnson v. State Farm Life Ins. Co.*, 695 F. Supp. 2d 201, 210 (W.D. Pa. 2010).

The Learys allege that Greenawalt advised them of the Program on or around March 25, 2006. ECF No. 11 at ¶ 12. Greenawalt allegedly told the Learys that contractors participating in the Program "had been diligently examined and vetted by State Farm," and that they had been "found to be reliable, reputable and competent." *Id.* at ¶ 13. He allegedly stated that individuals appearing on State Farm's list of approved contractors had previously performed satisfactory work for insured parties. *Id.* The Learys further aver that State Farm never disclosed that participating contractors charged less than other contractors for labors and materials, and that State Farm had a financial interest in encouraging insured parties to select approved contractors. *Id.* at ¶¶ 19, 51.

A misrepresentation is deemed to be "fraudulent" if the person making that representation "knows or believes that the matter is not as he [or she] represents it to be," "does not have the confidence in the accuracy of his [or her] representation that he [or she] states or implies," or "knows that he [or she] does not have the basis for his [or her] representation that he [or she]

17

states or implies." *Island Insteel Sys., Inc. v. Waters*, 296 F.3d 200, 212 (3d Cir. 2002)(quoting Restatement (Second) of Torts § 526). The Learys alternatively allege that State Farm knew of Fenton's deficiencies and failed to disclose them, or that State Farm misrepresented the extent to which it had evaluated the qualifications of all contractors participating in the Program. ECF No. 11 at ¶¶ 49-50. When construed in the light most favorable to the Learys, the averments contained in the amended complaint satisfy the requirements of Rule 9(b) by alleging that Greenawalt misrepresented the characteristics of approved contractors in general and the qualifications of Fenton in particular. *Island Insteel*, 296 F.3d at 212. Within the context of the surrounding allegations, the averments alleging that Greenawalt failed to disclose State Farm's financial interest in encouraging participation in the Program could reasonably be construed to allege "deceptive conduct." 73 PA. STAT. § 201-2(4)(xxi).

As noted earlier, a plaintiff proceeding under § 9.2(a) must allege that he or she justifiably relied on the "fraudulent or deceptive conduct" engaged in by the defendant. *Hunt*, 538 F.3d at 221-27; *Keller*, 733 A.2d at 646. The Learys surmount this hurdle by alleging that they were "induced to participate in the Program" by Greenawalt's representations. ECF No. 11 at ¶ 15. State Farm appears to question whether the Learys sufficiently allege that Greenawalt misrepresented Fenton's qualifications. ECF No. 13 at 13. The amended complaint, however, contains averments alleging that Greenawalt categorically misrepresented the qualifications of individuals appearing on State Farm's list of approved contractors. ECF No. 11 at ¶¶ 13-16, 49-50, 54-58. Since Fenton was an approved Program participant, any misrepresentation concerning the status of approved contractors in general necessarily extended to him in particular.

18

The record contains a copy of the proposal that Fenton submitted to the Learys. ECF No.

13-1 at 15-39. The exhibit is twenty-five pages long. *Id.* The final page contains a "Structural

Damage Claim Policy," which reads as follows:

> When you have a covered structural damage claim to your real property, you should know:
>
> -We want you to receive quality repair work to restore the damages to your property.
>
> -We will provide you with a detailed estimate of the scope of damage and costs of repairs. Should the contractor you select have questions concerning our estimate, they should contact your claim representative directly.
>
> -You may have the repairs made by a contractor of your choice.
>
> -If you select a contractor whose estimate is the same as or lower than our estimate, based on the same scope of damages, we will pay based upon their estimate. If your contractor's estimate is higher than ours, you should contact your claim representative prior to beginning the repairs.
>
> -State Farm cannot authorize any contractor to proceed with work on your property. Repairs should proceed only with your authorization.
>
> -State Farm does not guarantee the quality of workmanship of any contractor or guarantee that the work will be accomplished within any specific time frame.
>
> -It is understood that the contractor is hired by you, our insured, and that they work for you—not State Farm.

*Id.* at 39. Although this policy language appears on letterhead bearing the name of Fenton's

business, it clearly speaks from the perspective of State Farm. *Id.*

Under Pennsylvania's parol evidence rule, a plaintiff alleging that he or she was

fraudulently induced to enter into a complete written contract by false or misleading

representations made by a defendant cannot proceed against that defendant in an action arising

from the representations without alleging that "the representations were fraudulently or by

accident or mistake omitted from the integrated written contract." *HCB Contractors v. Liberty*

19

*Place Hotel Assocs.*, 652 A.2d 1278, 1279 (Pa. 1995). The Pennsylvania Supreme Court has applied this rule in a case involving claims arising under the UTPCPL. *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438-39 (Pa. 2004). Relying on the policy language providing that State Farm did "not guarantee the quality of workmanship of any contractor," State Farm contends that any reliance placed on Greenawalt's alleged representations about Fenton's qualifications could not have been justifiable. ECF No. 13 at 14-17.

The parol evidence rule applies only where the record contains "a writing that represents the parties' entire contract." *Toy*, 928 A.2d at 205. State Farm points to nothing in the pleadings or attached exhibits which suggests that the "Structural Damage Claim Policy" was meant to encapsulate the entire understanding that the Learys had with State Farm concerning their decision to participate in the Program. Indeed, the policy language appears to have been submitted to the Learys by Fenton rather than by State Farm. ECF No. 13-1 at 39. It is not clear whether this language was provided to the Learys when they originally purchased their insurance policy from State Farm, whether it was given to them by Greenawalt during their discussions about the Program, or whether they saw it for the first time when Fenton submitted his proposal. Furthermore, State Farm's refusal to guarantee the "quality of [Fenton's] workmanship" was not necessarily inconsistent with Greenawalt's alleged assurances concerning the vetting and approval process. The Learys do not base their claims on an assertion that State Farm guaranteed that Fenton (or any other approved contractor) would actually complete the repairs to their satisfaction. Instead, they base their claims on an assertion that Greenawalt misrepresented the degree to which State Farm had evaluated Fenton (and the other approved contractors) in the past. ECF No. 11 at ¶¶ 13, 18, 46-50, 57-58, 60-63. If State Farm believes that the applicable policy language rendered the Learys' reliance on Greenawalt's statements unjustifiable, it is free

20

to advance that position at a later stage in this litigation. *Toy*, 928 A.2d at 207 (remarking that an individual "is not justified in relying upon the truth of an allegedly fraudulent misrepresentation if he knows it to be false or if its falsity is obvious"). At the pleadings stage, however, the Court cannot conclude as a matter of law that the Learys were not justified in relying on the representations allegedly made by Greenawalt. *Phillips*, 515 F.3d at 233 (explaining that a plaintiff need not satisfy a "probability requirement" at the pleadings stage).

In the amended complaint, the Learys alternatively aver that State Farm knew of Fenton's alleged deficiencies and failed to disclose them, or that it misrepresented the extent to which it had investigated his qualifications to perform the necessary repair work. ECF No. 11 at ¶ 50. They assert that the evidence needed to substantiate these allegations is "solely within the knowledge and possession" of State Farm. *Id.* State Farm contends that the Learys cannot state a claim under the UTPCPL by reference to information that is not yet available to them. ECF No. 13 at 15-16. This argument is without merit. Federal Rule of Civil Procedure 11(b)(3) specifically permits a party to represent that certain "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . ." FED. R. CIV. P. 11(b)(3). The pleading of alternative theories is expressly permitted by Federal Rule of Civil Procedure 8(d)(2). FED. R. CIV. P. 8(d)(2). The Learys are not required to *prove* the truth of their allegations at the pleadings stage. *Zion v. Nassan*, Civ. A. No. 09-383, 2011 WL 3757319, \*9, 2011 U.S. Dist. LEXIS 95303, \*26-7 (W.D. Pa. Aug. 25, 2011).

## VI. CONCLUSION

No opinion is expressed as to whether the Learys will ultimately be successful in this action, but the Court finds that the Learys have statutory standing to proceed against State Farm

21

under § 9.2(a) of the UTPCPL, that the averments contained in the amended complaint allege a form of actionable "misfeasance," and that the pleadings contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Accordingly, State Farm's motion to dismiss (ECF No. 12) will be denied. An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| WILLIAM G. LEARY, JR., and | ) |
| AMY M. LEARY, husband and wife, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 3:11-145 |
| | ) |
| STATE FARM FIRE & CASUALTY | ) JUDGE KIM R. GIBSON |
| COMPANY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER OF COURT

AND NOW, this 24th day of February 2012, this matter coming before the Court on

the Defendant's Renewed Motion to Dismiss (ECF No. 12), **IT IS HEREBY ORDERED** that

the motion is **DENIED**.

**IT IS FURTHER ORDERED** that the Defendant's original Motion to Dismiss (ECF

No. 7) is **DENIED** as moot.

**BY THE COURT:**

**KIM R. GIBSON
UNITED STATES DISTRICT JUDGE**

cc:     All counsel of record

23